# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

v.

TREY ALEXANDER GILES,

            Defendant.

No. 25-03023-01-CR-S-SRB

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1.      **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by R. Matthew Price, United States Attorney, and Stephanie L. Wan, Assistant United States Attorney, and the defendant, Trey Alexander Giles ("the defendant"), represented by Ian Lewis.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2.      **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count 1 of the indictment, charging him with a violation of 18 U.S.C. § 922(o), that is, possession

Case 6:25-cr-03023-SRB    Document 31    Filed 10/03/25    Page 1 of 16

of a machinegun. By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is, in fact, guilty of this offense.

3. **Factual Basis for Guilty Plea**. The parties agree that the facts constituting the offense to which the defendant is pleading guilty are as follows:

On September 13, 2023, the Springfield, Missouri, Police Department ("SPD") responded to Cox South hospital to contact Witness 1 ("W1") who stated that GILES had pointed a firearm at her, and then left the scene in a blue Ford Explorer bearing license plate that ended in T49.

W1 reported that she was at the hospital with a friend. She let GILES know she was at the hospital and wanted to leave. GILES showed up, and she met him in the parking lot. W1 said that GILES was incredibly intoxicated. She got into the driver's seat of GILES's vehicle, and she and GILES began verbally arguing. W1 then got out of the vehicle, and began walking away from GILES. According to W1, during the argument, GILES angrily brandished a Glock .22 with a "switch," and a white extended magazine at her. She begged GILES to leave her alone, and GILES left the area north on National.

A review of the Cox South surveillance footage showed the Ford Explorer, and an individual believed to be W1, exiting the Ford and walking away from the vehicle. Another subject, believed to be GILES, is seen exiting the Ford and following W1. GILES returns to the Explorer, and gets into the driver's side. The Ford then drives erratically through the parking lot toward W1. The Ford pulls up behind the Charger, and blocks it in. At one point, the Ford leaves erratically again, W1 is seen standing toward the back of the Charger, and GILES appeared to step out and away from the Explorer.

On September 21, 2023, SPD responded to the area of 425 East Kearney Street, Springfield, Greene County, Western District of Missouri, for a check person with a weapon. As the SPD officer arrived, he observed a group of four individuals exiting a blue Ford Explorer bearing a license plate that ended with T49. The officer called them towards him, and eventually identified the four individuals as:

1. Chad Brooks;
2. Trey GILES;
3. Jeffery Tindle; and
4. Trejuane Washington.

The officer approached them, he asked the group about firearms. They stated that they did not have any firearms, and there were no firearms in the vehicle.

Another officer also responded. He checked the license plate or the Ford Explorer and found it had a history with GILES, and GILES had a gang history. The second officer frisked all the individuals for weapons, and found nothing of note. The officer asked whose car it was, and the

individuals remained quiet and nervously looked at each other. The officer asked again whose vehicle it was, and Washington stated, "We just chillin' here," and stated that they lived close by.

The initial officer asked the group about the vehicle being towed recently, and the secondary officer noted none of the subjects claimed to be involved with the vehicle. The initial officer noted that he observed the individuals in the vehicle. The initial officer walked toward the vehicle, and saw a Glock firearm with a loaded 30-round extended magazine in the front passenger seat in plain view.

The initial officer searched the vehicle, and found an Anderson Arms AR-style pistol on the front passenger seat floorboard. He located a Pioneer Arms AK-style rifle on the rear passenger floorboard. A Glock pistol with a 50-round magazine was located on the center floorboard area. A Glock pistol was located under the rear passenger side seat. All of the firearms were loaded. The initial officer returned to speak with the group. At that time, GILES identified himself as the vehicle owner. GILES stated his DNA would not be on the firearm. He claimed he did not know anything about the firearms in the vehicle, and there were no guns in the vehicle. GILES stated he was not a felon, and the officers could take the firearms because they were not supposed to be in there.

A SPD acting sergeant arrived on scene. The sergeant noted the Glock 22 with the drum magazine had an illegal "auto switch" (machinegun conversion device ("MCD")) on the back of the slide. The rest of the vehicle was searched as a result of the discovery of the MCD. The secondary officer located:

- A black and red ski mask in the backseat.
- A box of 7.62x39 ammunition in the rear cargo area.
- Eight .45 rounds in a baggie in the driver's side backseat.
- A single rifle round in the front passenger seat cubby area.
- Loose rifle ammunition in the center console.
- A black and gray checked Louis Vuitton bag that contained a broken iPhone, marijuana, and six .45 rounds of ammunition in the middle backseat area.

The initial officer discovered that GILES and Tindle had warrants for their arrest. Both were placed under arrest, and the keys to the Explorer were given to Tindle at GILES's request.

The secondary officer seized all of the firearms and evidence, and preserved everything for fingerprint and/or DNA processing.

On September 25, 2023, a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Task Force Officer ("TFO") provided the Glock pistol with the drum magazine, and the drum magazine to an ATF Special Agent ("SA") to send the items to the ATF lab for fingerprint analysis, function test, and National Firearm Act determination of the suspected MCD affixed to the Glock.

Case 6:25-cr-03023-SRB    Document 31    Filed 10/03/25    Page 3 of 16

The firearm seized on September 21, 2023, was identified as a Glock, 22 Gen 4, .40 caliber pistol bearing serial number SZK679, with a drum magazine containing 51 .40 caliber cartridges. Both the firearm and the drum magazine were swabbed for DNA.

The DNA analysis showed that GILES's DNA was present on the following parts of the Glock pistol:

1. Grips
2. Trigger and trigger guard
3. Scalloped areas of slide
4. Front sight and muzzle area
5. Grip sleeve
6. Optical accessory
7. Optical accessory battery
8. Drum ammunition magazine (body, lips, follower)
9. Drum ammunition magazine (round drum portion)

The Glock pistol with the affixed machinegun conversion device bearing serial number SZK679 was examined and test-fired by an ATF Firearms Enforcement Officer ("FEO") with the ATF's Firearms & Ammunition Technology Division ("FATD"). The FEO confirmed that the firearm was a Glock, 22 Gen4, .40 caliber pistol bearing serial number SZK679, and was fitted with a machinegun conversion device. The FEO test fired the Glock with the MCD and determined that it functioned as designed. He concluded that the Glock was a firearm. Further, he confirmed that the Glock with the MCD installed is a weapon which shoots, automatically more than one shot, without manual reloading, by a single function of the trigger, therefore, the Glock with the MCD installed is a machinegun. The MDC itself was a machinegun, as it was a combination of parts designed and intended for use in converting a weapon into a machinegun. As a machinegun, the MCD was a firearm subject to the National Firearms Act ("NFA"), however, it bore no NFA marks of identification or serial number as required by law.

On January 14, 2025, the ATF SA provided photographs of the Glock pistol bearing serial number SZK679, to an ATF SA and Nexus Expert. The Nexus Expert determined that if both of the firearms were received and/or possessed in Missouri, they travelled in or affected interstate and/or foreign commerce.

On January 15, 2024, the SA received the search results for any NFA firearms registered to GILES. He determined that GILES did not have any firearms registered with the National Firearm Registration and Transfer Record.

The defendant admits that he knew that he was in possession of a weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger, specifically the Glock pistol bearing serial number SZK679, equipped with a machinegun conversion device.

Case 6:25-cr-03023-SRB     Document 31     Filed 10/03/25     Page 4 of 16

4.  **Use of Factual Admissions and Relevant Conduct.**  The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

5.  **Statutory Penalties.**  The defendant understands that, upon his plea of guilty to Count 1 of the indictment, charging him with possession of a machinegun, the maximum penalty the Court may impose is not more than 10 years' imprisonment, not more than 3 years' supervised release, a $250,000 fine, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

6.  **Sentencing Procedures.**  The defendant acknowledges, understands and agrees to the following:

   a.  in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

   b.  the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

   c.  in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to 3 years;

Case 6:25-cr-03023-SRB    Document 31    Filed 10/03/25    Page 5 of 16

d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to 2 years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed 3 years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f. any sentence of imprisonment imposed by the Court will not allow for parole;

g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

i. the defendant agrees that he is the sole and rightful owner of (1) the Glock pistol bearing serial number SZK679, equipped with a machinegun conversion device seized on or about September 21, 2023, and (2) the Glock pistol bearing serial number ADXH965, equipped with a machinegun conversion device seized on or about November 2, 2023, to the best of his knowledge, no one else has any ownership or other interest in the property. The defendant agrees to abandon his interest in the property, and to that effect, agrees to complete and execute ATF Form 3400.1, provided to the defendant, to facilitate the forfeiture and destruction of the property.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to possession of a machinegun for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Count 2, possession of a machinegun, at sentencing.

Case 6:25-cr-03023-SRB    Document 31    Filed 10/03/25    Page 6 of 16

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8.  **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve

Case 6:25-cr-03023-SRB    Document 31    Filed 10/03/25    Page 7 of 16

the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

   b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2K2.1;

   c. There is no agreement between the parties regarding the applicable enhancements. The parties agree that the Court will determine the applicable enhancements after receipt of the presentence investigation report prepared by the United States Probation Office and after the parties have had an opportunity to be heard on the applicable enhancements;

   d. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention

Case 6:25-cr-03023-SRB    Document 31    Filed 10/03/25    Page 8 of 16

to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines, if his offense level, prior to the operation of § 3E1.1(a) is level 16 or greater. If his offense level is less than level 16, he entitled to a 2 level-reduction pursuant to § 3E1.1(a). The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

e.  There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

f.  The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

g.  The defendant understands that the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable." However, while the United States does not agree that a sentence outside the Guidelines range is appropriate, the defendant may argue for a sentence outside the Guidelines range. The agreement by the Government not to seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

h.  The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

i. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications**. The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing**. The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights**. The defendant understands that the United States expressly reserves the right in this case to:

a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

b. comment on the evidence supporting the charges in the indictment;

c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentence imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

   a. the right to plead not guilty and to persist in a plea of not guilty;

   b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

   c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

   d. the right to confront and cross-examine the witnesses who testify against him;

   e. the right to compel or subpoena witnesses to appear on his behalf; and

   f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offense to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands that he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement,

except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

b.      The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16.      **Financial Obligations.**  By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

a.      The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged, related criminal activity;

b.      The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

c.      The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

d.      Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

Case 6:25-cr-03023-SRB    Document 31    Filed 10/03/25    Page 12 of 16

e.     At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

f.     The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

g.     The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

h.     The defendant certifies that he has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future; and

i.     In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn.

17.     **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

Case 6:25-cr-03023-SRB     Document 31     Filed 10/03/25     Page 13 of 16

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than

Case 6:25-cr-03023-SRB    Document 31    Filed 10/03/25    Page 14 of 16

the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys, or any other party to induce him to enter his plea of guilty.

21.    **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22.    **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

**R. Matthew Price**
United States Attorney

By

**Stephanie L. Wan**
Assistant United States Attorney
Missouri Bar No. 58918

Dated: 10-2-2025

*[Signatures continue on the following page.]*

Page **15** of **16**

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 10/3/2025

Trey Alexander Giles
Defendant

I am defendant Trey Alexander Giles's attorney. I have fully explained to him his rights with respect to the offenses charged in the indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, **Trey Alexander Giles**'s decision to enter into this plea agreement is an informed and voluntary one.

Dated: 10/3/2025

Ian Lewis
Attorney for Defendant

Page **16** of **16**